UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 19-464-DLB

ANDREW JOHNSTON                                                                       PLAINTIFF

v.                          **MEMORANDUM OPINION AND ORDER**

DIRECTOR BUREAU OF PRISONS                                                  DEFENDANT

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Andrew Johnston is an inmate currently confined at the Federal Medical Center ("FMC") Lexington in Lexington, Kentucky. Proceeding without an attorney, Johnston has filed a civil rights action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), (Doc. #1), and a Motion to Proceed *In Forma Pauperis*, (Doc. #4). The information contained in Johnston's fee Motion indicates that he lacks sufficient assets or income to pay the $350.00 filing fee. Because Johnston will be granted pauper status in this proceeding, the $50.00 administrative fee is waived. District Court Miscellaneous Fee Schedule, § 14.

The Court must conduct a preliminary review of Johnston's Complaint because he has been granted pauper status. 28 U.S.C. § 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates Johnston's Complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At this stage, the Court accepts

1

the plaintiff's factual allegations as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

The nature of Johnston's Complaint makes it difficult to understand, as he purports to incorporate by reference claims that he made in a habeas petition filed in another case. (Doc #1 at 1). Proceeding in such a manner runs afoul of Federal Rule of Civil Procedure 8 because piecemeal complaints filed as separate documents in separate cases necessarily do not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," nor are they made up of allegations that are "simple, concise, and direct." FED. R. CIV. P. 8(a)(2), (d)(1). *See also Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008) (quoting *Windsor c. Co. Dep't of Corr.*, 9 Fed. App'x 967, 968 (10th Cir. 2001)) ("Neither the Court nor Defendants are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief. It is Plaintiffs' responsibility to edit and organize their claims and supporting allegations into a manageable format.").

Regardless, from what the Court is able to ascertain from the Complaint filed in this case, Johnston essentially challenges his security classification and prison designation decision made by the Bureau of Prisons ("BOP"). (Doc. # 1). Specifically, he claims that, he was "trans-segged" from the Special Housing Unit ("SHU") at United States Penitentiary ("USP") Big Sandy to FMC Lexington's SHU on October 19, 2019, while he was waiting re-designation to a prison other than USP Big Sandy. *Id.* According to Johnston, due to his cooperation in his criminal case, he requires placement in protective custody. *Id.* In addition, he claims that his custody points are supposed to be

2

at 22 (which designates him for a medium-security prison) rather than 26 (which designates him for a maximum-security prison). *Id.* Even so, he claims that his high-profile and "highly-publicized" cooperation should qualify him for a "management variable," which would allow that BOP to designate him at a different security level. *Id.* However, Johnston claims that he has learned from FMC staff that he has been designated to be transferred to a "USP in this region," where Johnston believes he will be targeted with immediate violence even in the SHU. *Id.* He claims that this is in violation of his constitutional due process and equal protection rights, as well as 5 U.S.C. §§ 702(2)(A) and 706(1), the United States Marshal Service WITSEC procedures, and state tort law. *Id.*

A complaint must set forth sufficient allegations to "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and the Court must dismiss a prisoner's complaint that fails to do so, *Hill v. Lappin*, 630 F. 3d 468, 470-71 (6th Cir. 2010). The Court's obligation to liberally construe *pro se* pleadings does not extend so far as to require it to conjure unpled facts or create claims for the plaintiff. *Moorman v. Herrington*, No. 4:08-cv-P127-M, 2009 WL 2020669, at *1 (W.D. Ky. July 9, 2009) (citations omitted). The Court has thoroughly reviewed Johnston's Complaint and concludes that it must be dismissed.

First, to the extent that Johnston alleges constitutional claims, those claims may only be pursued pursuant to the doctrine of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), which held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents' violation of" his constitutional rights. 403 U.S. at 397. However, the only Defendant named in Johnston's Complaint is

3

the Director of the BOP. Johnston may not bring these claims against the BOP Director in his official capacity, as a suit against a government employee in his or her "official capacity" is not a suit against the employee but is instead a suit against the government agency that employs the individual. *Mitchell v. Chapman*, 343 F.3d 811, 822 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985); *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978)). Thus, an official capacity suit against the BOP Director is a suit against the BOP, which is a federal agency. While *Bivens* authorizes suits against federal employees for violations of civil rights, it does not waive the sovereign immunity enjoyed by the United States and its agencies. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (*Bivens* claims may be asserted against federal officials only in their individual capacities).

Nor may he bring his claim against the BOP Director in his individual capacity, absent an allegation that the BOP Director was "personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (citing *Rizzo v. Goode*, 423 U.S. 362, 373–77 (1976)). While *Bivens* expressly validated the availability of a claim for damages against a federal official in his or her individual capacity, an officer is only responsible for his or her own conduct. *Iqbal*, 556 U.S. at 676–77. *See also Ziglar v. Abbasi*, 137 S.Ct. 1843, 1860 (2017). The mere fact of supervisory capacity is not enough; respondeat superior is not an available theory of liability. *Iqbal*, 556 U.S. at 677. "Even a pro se prisoner must link his allegations to material facts . . . and indicate what each defendant did to violate his rights." *Sampson v. Garrett*, 917 F.3d 880, 882 (6th Cir. 2019) (citing *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010); *Lanman*

4

*v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Johnston's Complaint fails to comply with these requirements with respect to his claims against the Director of the BOP.

Moreover, Johnston's claims are solely based upon his security classification and prison designation. However, "[w]hen a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment,' and the treatment programs (if any) in which he may participate." *Tapia v. United States*, 564 U.S. 319, 331 (2011) (citing 18 U.S.C. §§ 3621(b), (e), (f); 3624(f); 28 C.F.R. pts. 544, 550 subpart F (2010)). An inmate has no liberty interest in being placed in any particular penal institution, *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983), or classified at any particular security level, *see Harris v.* Truesdell, 79 F. App'x 759, 759 (6th Cir. 2003) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 224 (1976)), and hence no rights protected by the Due Process Clause in that regard. *Sandin*, 515 U.S. at 484–86. *See also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.") (citing *Meachum*, 427 U.S. at 225); *Moody*, 429 U.S. at 88 n.9 ("Congress has given federal prison officials full discretion to control [prisoner classification and eligibility for rehabilitative programs in the federal system], 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."). Indeed, the BOP's decisions regarding where to house a particular inmate pursuant to 18 U.S.C. § 3621(b) are expressly insulated from judicial review under the Administrative Procedure Act ("APA"). 18 U.S.C. § 3625.

Moreover, to the extent that Johnston bases his claims on the alleged violations of unspecified BOP and/or United States Marshal Service policies and procedures, these policies and procedures are not "laws" which may be broken. Rather, they are merely internal agency guidelines, and they are not promulgated in compliance with the APA. *Reno v. Koray*, 515 U.S. 50, 61 (1995). Accordingly, they do not carry the force of law and do not create substantive rights that may be enforced by any person. *See Schweiker v. Hansen*, 450 U.S. 785, 789 (1981); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990). Because a federal employee's failure to adhere to an internal policy or procedure does not constitute a violation of federal law, any "claim" under such policy or procedure fails as a matter of law. *United States v. Loughner*, 782 F. Supp. 2d 829, 831–32 (D. Ariz. 2011); *Callahan v. Patton*, No. 07-CV-54-JMH, 2007 WL 1662695, at *5 (E.D. Ky. June 4, 2007).

Finally, to the extent that Johnston's claims are based upon tort law (i.e., allegations of willful and wanton conduct or negligence) with respect to his security classification, claims predicated upon the tortious conduct of federal employees acting within the scope of their employment may only be pursued under the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq*. ("FTCA"). Johnston neither invokes the FTCA in his complaint nor does he name the United States as a defendant, as is required for an FTCA claim. *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir.1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee.") (citing 28 U.S.C. § 2679(a)). Further, the remedy against the United States provided by the FTCA is exclusive with respect to claims that fall within its scope, and thus a plaintiff may not circumvent its exhaustion or limitations provisions

merely by pursuing a negligence claim under state law directly against the federal employee in his or her individual capacity. 28 U.S.C. § 2679(b)(1).

For all of these reasons, Johnston's Complaint must be dismissed for failure to state a claim.

Accordingly, the Court hereby **ORDERS** as follows:

(1) Johnston's Motion for Leave to Proceed *In Forma Pauperis* (Doc. #4) is **GRANTED**. Section 1915(b)(1) requires a prisoner-plaintiff to pay the $350.00 filing fee for a civil action as set forth below;

 (a) The financial documentation filed by Johnston indicates that he lacks sufficient income or assets to pay the initial partial filing fee required by 28 U.S.C. § 1915(b)(1)(A), and payment of such fee is therefore **DEFERRED**;

 (b) The Clerk of the Court shall open an account in Johnston's name for receipt of the filing fee. The Clerk shall complete a Notice of Payment Form (Form EDKY 525) with (a) Johnston's name, (b) his inmate registration number, and (c) this case number. The Clerk shall serve a copy of this Order and the Notice of Payment Form upon the Jailer/Warden of the institution in which Johnston is currently confined;

 (c) Each month Johnston's custodian shall send the Clerk of the Court a payment in an amount equal to 20% of his income for the preceding month out of his inmate trust fund account, but only if the amount in the account exceeds $10.00. The custodian shall continue such monthly payments until the entire $350.00 filing fee is paid. 28 U.S.C. § 1915(b)(2);

(2) Johnston's Complaint (Doc. #1) is **DISMISSED WITHOUT PREJUDICE**;

(3) Any pending requests for relief are **DENIED AS MOOT**;

(4) The Court will enter an appropriate Judgment; and

(5) This matter is **STRICKEN** from the Court's docket.

This 12th day of December, 2019.

Signed By:
David L. Bunning
United States District Judge

K:\DATA\ORDERS\ProSe\19-464 Johnston MOO Dismissing.docx